**WALTER T. GRABOWSKI, ESQ**
Holland, Brady & Grabowski
61 North Washington Street
Wilkes-Barre, PA 18701
(570) 606-6100

and

**ROBERT M. VREELAND, ESQ**
17 James Street
Bloomfield, New Jersey 07003
973-429-7710
RMV (7928)


## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALNOOR RAHEMTULLA and SHYROSE RAHEMTULLA, | CIVIL ACTION NO.05-198 |
| Plaintiffs, | |
| v. | |
| NAZIM HASSAM, a/k/a NAZIM B. HASSAM, a/k/a HAZIM B. HASSAM, a/k/a NAZIM HASIAM, t/a HOWARD JOHNSON INN; SHAMSHAD N, HASSAM, a/k/a SHAMIM B. HASSAM, a/k/a SHAMI·HASSAM; OMSRISHI, INC., a fictitious entity; KILIMANJARO STEAKHOUSE BAR & GRILL; OM SRI SAI, INC., a Pennsylvania Corporation; JOHN and JANE DOES 1-100, fictitious persons; ABC and XYZ CORPORATIONS 1-100, fictitious entities, | FIRST AMENDED COMPLAINT AND JURY DEMAND |
| Defendants. | |

The plaintiffs Alnoor Rahemtulla and Shyrose Rahemtulla, his wife (collectively the plaintiffs), residing at 410 Spicer Avenue, South Plainfield, NJ 07080, for their complaint allege and say:

<u>NATURE OF THE ACTION</u>

1. This action concerns a fraud. The Defendants deceived the plaintiffs into investing over $340,000.00 for a purported stake in a business that the defendants never intended to operate as represented and promised. The venture was, but a mere scam used by the defendants to deprive the plaintiffs of their monies and labor for the benefit of the defendants and the plaintiffs' significant detriment. To redress the injuries caused by the defendants, the plaintiffs seek a declaration invalidating the business venture and all writing that relate thereto. The plaintiffs seek compensatory damages, punitive damages and indemnification from the defendants. The plaintiffs also seek the imposition of an equitable lien and constructive trust against all of the defendants' assets, real and personal, and enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, until and/or upon the event of final judgment being entered.

<u>JURISDICTION</u>

2. The jurisdiction of this Court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332 as well as federal question pursuant to 28 U.S.C. § 1331.

3. Pendant jurisdiction is applicable to those issues and counts of the Complaint which might not be otherwise independently actionable before this Court.

<u>VENUE</u>

4. Venue is proper within this forum as a result of the proceedings having been transferred to this Court.

<u>THE PARTIES</u>

5. The plaintiffs, Mr. and Mrs. Rahemtulla, are citizens of the State of New Jersey and reside at 410 Spicer Avenue, South Plainfield, NJ 07080.

6. The defendant Nazim Hassam a/k/a Nazim B. Hassam a/k/a Hazim B. Hassam, a/k/a Nazim Hasiam, (Hassam) t/a Howard Johnson Inn is a citizen and domiciliary of the State of Pennsylvania and is known or believed to reside at 63 Route 611, Bartonsville, PA 18321.

7. The defendant Shamshad N. Hassam, a/k/a Shamim Hassam, a/k/a Shamim B. Hassam, a/k/a Shami Hassam, is a citizen and domiciliary of the State of Pennsylvania and is known or believed to reside at 63 Route 611, Bartonsville, PA 18321 and/or 570 Pocono Blvd., Mount Pocono, PA 18344.

8. The defendant Omsrishi, Inc., is a fictitious, unrecorded and unregistered entity.

9. The defendant Kilimanjaro Steakhouse Bar & Grill is a partnership formed by the plaintiff Alnoor Rahemtulla and the defendant Hassam. It is known or believed to maintain it address at 63 Route 611, Bartonsville, PA 18321.

10. The defendant Om Sri Sai, Inc., is a Pennsylvania Corporation, having its principal business address at the Howard Johnson Hotel located at 63 Route 611, Bartonsville, PA 18321.

11. The defendants John and Jane Does 1-100 are fictitious persons, and ABC

and XYZ Corporations 1-100 are fictitious entities.

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>

12. In or about the end of 2002, the beginning of 2003 Mr. Nazim Hassam solicited Mr. Alnoor Rahemtulla to join him in a business relationship concerning a food and beverage operation at the Howard Johnson Hotel located in Bartonsville, Pennsylvania. The form of business was to be a partnership and the name of the operation was to be the Kilimanjaro Steak House, a Pennsylvania General Partnership.

13. Located in the hotel was an existing space for an eating establishment, a bar, banquet halls and one (1) kitchen.

14. The source of revenue for the partnership was to be based on the sale of food and beverages (soft beverages and liquor) through the eating establishment, the bar, room service and catering events taking place at the hotel such as special events, banquets and the like. The one (1) kitchen at the location supplied the food and beverages for the hotel.

15. An overall scheme of the business as further represented by the defendant Mr. Hassam was to grow the restaurant part of the operation into a franchised operation.

16. The manner in which the business was supposed to have the rights to conduct its operation was based on the defendant Nazim Hassam's representing that he held the exclusive rights that would be shared with the plaintiff through the contemplated partnership.

17. No carve out was made for certain parts of the operation to be conducted separate and apart from the partnership or by and through a competing operation conducted by Mr. Hassam or any other person or entity.

18. Particularly, the defendant Nazim Hassam did not reserve to himself or any other person or entity any right to run a side business out of the establishment.

19. Obligations and responsibilities pertaining to the defendant Nazim Hassam which he was supposed to tend to with his own funds included, rebuilding the existing restaurant into a franchise restaurant and running it like a franchised operation; refurnish the kitchen equipment, existing fire system and heat/ac system; supply food for the opening of the restaurant; supply the liquor inventory; set up the menu for the restaurant; set up the staffing levels for chefs, cooks, waiters, bartenders and janitorial staff; overlook the quality of food and service levels; furnish capital prior to the opening of the place; and provide authorization to operate at the Howard Johnson Hotel.

20. The plaintiff Mr. Rahemtulla was supposed to provide his labor and additional funding. The labor was to involve his participation in the day- to-day affairs of the business, aided by Mr. Hassam's guidance.

21. Mr. Hassam knew that in discussing the business venture with Mr. Rahemtulla that he (Mr. Rahemtulla) did not have any experience in the food and beverage or liquor business.

22. Mr. Hassam knew Mr. Rahemtulla was going to need assistance; guidance; coaching and that Mr. Hassam's dealings with Mr. Rahemtulla was really Mr. Rahemtulla's first operation.

23. Mr. Hassam held himself out as having extensive experience and superior knowledge about business matters and it was supposed to be Mr. Hassam's superiority of knowledge and experience that would allow for the operation's success.

24. For example, Mr. Hassam described himself as an intelligent, sophisticated and aggressive businessman. He said he was experienced with vendors, suppliers, and

the insides of running businesses. He said he knows what is going on and how to sell and buy businesses.

25. As a means for Hassam to gain the trust, confidence and reliance of the plaintiffs for Mr. Rahemtulla to join the partnership, Hassam informed the plaintiffs they could trust and rely upon his business judgment, skill and experience and that if the plaintiffs did so, the plaintiffs would be assured of success in the partnership operation and making substantial profits.

26. The funding that Mr. Rahemtulla was supposed to provide was described as being in the amount of $500,000.00, payable through an up front grant of $350,000.00 and by and through a $150,00.00 Note.

27. In order to induce Mr. Rahemtulla to provide the said funding Mr. Hassam made specific and particular representations to Mr. Rahemtulla and his wife the plaintiff Shyrose Rahemtulla that the funds would be safeguarded and protected. The funds were supposed to be deposited into and partnership and would not be used except as necessary in the event the partnership business really needed the funds during its operation.  The funds did not belong to Hassam nor could they be taken by him or the other defendants or treated by them as their own funds. The funds could only be used for the partnership purposes and only if Mr. Rahemtulla and Mr. Hassam agreed upon their specific use and both signed for it. The funds could not be taken from the safety of the partnership account unless both Mr. Rahemtulla and Mr. Hassam signed for it.

28. According to the representations of Mr. Hassam the revenues of the business were to be no less than $2 million per year. The start-up costs of the operation were to be funded by Mr. Hassam and the profits were to be evenly divided between Mr. Hassam and Mr. Rahemtulla based on a 50/50 split.

29. Mr. Rahemtulla was supposed to receive a further stipulated salary for the reason that his involvement in the day-to-day affairs were recognized by Mr. Hassam as entitling him to such amount and for the additional reason that Mr. Rahemtulla was relying on his partnership work as the source of income to support his family.

30. Mr. Hassam, on the other hand, was noted as having several on going business interests beyond the partnership, including, but not limited to a private lending business and real-estate acquisitions.

31. In or about January 2003 Mr. Rahemtulla provided a deposit of $25,000.00 for his involvement in the partnership which occurred in the plaintiffs' New Jersey home. No written documentation existed at the time the funds were provided to Mr. Hassam. Mr. Hassam represented to the plaintiffs that they should not be concerned with such technicalities, but rather they should trust him. Hassam told the plaintiffs that their money would be safe with him. He represented that their money would not be used by him. The funds would be deposited into a partnership account.

32. Also, the money would not be used by him and could only be used if necessary for the partnership, and as indicated above he and Mr. Rahemtulla would have to both agree upon the use and both he and Mr. Rahemtulla would need to sign for it. If these conditions were not met the funds could not be used.

33. Hassam further informed the plaintiffs that he does not use lawyers when making transactions because he operates on trust, but in order to give the plaintiffs assurance he would have a neutral lawyer make transactional documents for them in connection with the partnership.

34. Joseph Hanyon, Esq., was described by Mr. Hassam as the neutral lawyer whom Mr. Hassam contacted to make the papers for the parties.

35. In or about February 2003 the transactional documents were said to be completed and a meeting was held at the offices of Mr. Hanyon to sign them. The meeting was held at night when no one was present in the offices of Mr. Hanyon, except Mr. Hanyon, the plaintiffs and Mr. Hassam.

36. The transactional documents consisted of a Partnership Agreement; Note for $150,000.00; and Lease between Omsrishi, Inc., a New Jersey Corporation and the partnership. Mr. Hassam he was the principal of Omsrishi, Inc., and it was represented by him to be the owner of the HJ Hotel where the partnership business would be conducted.

37. In actuality and despite the representations and promises of Mr. Hassam, Mr. Hanyon was not a neutral lawyer. He represented Mr. Hassam, but that information was not properly made known to the plaintiffs.

38. At the meeting the plaintiffs were wholly unaware of their unrepresented status and the effect it had on them and their rights and interests. At the meeting Mr. Rahemtulla provided another $315,000.00 toward his involvement in the partnership based upon his continued trust and confidence in Mr. Hassam. The tendering of the Rahemtullas' money is established by four (4) separate checks that were given to Mr. Hassam, including the initial check for $25,000.00. The checks are identified as follows: First Union Check No. 103 in the amount $25,000.00; Fleet Check No. 101 in the amount of $15,000.00; Fleet Check No. 103 in the amount of $30,000.00 First Union Check No. 104 in the amount of $120,000.00; Fleet Check No. 102 in the amount of $25,000.00; Fleet Check No. 104 in the amount of $125,000.00 against an account Hassam held with his wife.

39. The money was obtained by the Rahemtullas borrowing against their home,

which Mr. Hassam knew.

40. The signing of the partnership documents occurred in the offices of Joseph Hanyon, Esq.

41. Paragraph ¶ 5C of the Partnership Agreement says no part of the $500,000 shall be considered an initial contribution for the start up of the partnership. Such sum is considered only as consideration for the right to use and operate the facility as more defined in the Commercial Lease Agreement.

42. Paragraph ¶ 5B of the Partnership Agreement provided for the manner in which Mr. Rahemtullas' monies would be handled. It says:

> The foregoing sums shall be deposited into an account established in the partnership name at First Union Bank. Nazim Hassam and Alnoor A. Rahemtulla shall have signatory powers for said account, however, the account may not be drawn upon without the signature of each Nazim Hassam and Alnoor A. Rahemtulla.

43. Mr. Rahemtulla trusted and relied upon Mr. Hassam's promises through the time of the execution of the documents as well as with respect to aforesaid terms of the partnership documents.

44. To induce the Rahemtullas to be involved, the Hassams first spent a considerable amount of time with the Rahemtullas while they worked on building the Rahemtullas' trust and confidence in them.   For example, the Hassams made themselves welcomed guests in the Rahemtullas' home. The Hassams shared meals with the Rahemtullas and sometimes they slept over in the Rahemtullas' home or had the Rahemtullas spend time with them. Mr. Hassam had the Rahemtullas' children refer to his as their Uncle.

45. In this regard and based on this family-like closeness that the Hassams encouraged, Mr. Hassam told the Rahemtullas that he was going to do a favor for them

by taking Mr. Rahemtulla into business with him to help the Rahemtullas make a better way of life for themselves and their children. Mr. Hassam told Mr. Rahemtulla that he was going to be the person to guide and help him. Mrs. Hassam told the Rahemtullas to trust her husband and assured them of success so long as they followed his lead.

46. Mr. Hassam is regarded as having carefully read the partnership documents and signed them as confirming his representations to Mr. Rahemtulla. Among other things, he confirmed his authority to form the partnership and the exclusivity of rights that were being provided for the partnership to conduct its business at the hotel. Mr. Hassam described himself as having such authority by and through his involvement with Omsrishi, Inc, the so-called New Jersey Corporation that he described as owning the property and which he described himself as being the president and shareholder.

47. For example, the Partnership Agreement says in relevant part: "[It is acknowledged that Nazim Hassam is the President and a shareholder of Omsrishi, Inc., a New Jersey Corporation. Omsrishi, Inc. is the property owner upon which the business of the partnership is to be situated within the Howard Johnson Inn]"

48. The above circumstances however were not true or accurate.

49. At the time Mr. Hassam was leading Mr. Rahemtulla into the partnership with him and at the time Mr. Hassam executed the transactional documents he did not have any involvement with a New Jersey Corporation called Omsrishi, Inc. In fact, that company did not exist and Mr. Hassam was not a president.

50. Also, Mr. Hassam knew from the start that he was not going to do, or honor any of the material aspects of the partnership that he used to get Mr. Rahemtulla to join with him.

51. For example, Mr. Hassam, knew he was going to take and keep the Rahemtullas' money and do whatever he wanted with it despite his promises and representations to the Rahemtullas that the money would be protected and safeguarded as discussed above.

52. From the start Hassam knew that he was not go to manage the partnership or properly capitalize it.

53. From the start Hassam knew that partnership was not going to generate anything close to the revenues he told Mr. Rahemtulla the partnership was going to generate.

54. From the start Hassam knew that he was never going to "franchise" the operation or grow the business as he represented, but rather he was only interested in having an eating establishment operating at the hotel to satisfy the HJ requirements. That was the real purpose behind having the operation at the hotel and in that regard he was going to have Mr. Rahemtulla work the operation on a daily basis so he would not have to do it.

55. From the start Hassam knew that the partnership was not going to be able to conduct liquor sales, which was a key and controlling part of its operation. Hassam knew that it needed a license, but it had none.

56. From the start Hassam knew that he was not going to have the partnership perform or derive the benefit of the catering sales at the hotel, such as the banquets and other events and that he was going to keep that business for himself and to the exclusion of the partnership.

57. From the start Hassam knew that not only was he going to deprive the partnership of the aforesaid fundamental business aspects that was promised, he was

going to take and use the partnership's resources to run those parts of the business for himself. Thus, not only did Hassam design and plan to deprive the partnership of business, he was going to deplete and use its assets for his gain and purpose and, in turn saddle the partnership with unwarranted and unauthorized expenses and losses.

58. Also, through intentional omission Hassam failed to disclose to, and inform about Mr. Rahemtulla about the true circumstances affecting the property. OM SRI SAI, INC., a Pennsylvania Corporation is regarded as having the deed interest to the property as well as the right to run the property as a Howard Johnson Hotel.

59. OM SRI SAI, INC., has a number of shareholders who have been described as Babu Patel; Kirit (Curtis) Patel; Bipin Patel; and Urvashi Parikh.

60. According to the contract documents between Mr. Hassam and the other members of OM SRI SAI, INC., as well as the further after-the- fact acknowledgments of Mr. Hassam and several other witnesses Mr. Hassam is not the President of that entity either and he does not have a controlling interest. Mr. Hassam is relegated to a 49% interest and the controlling 51% interest is retained by the block of members of OM SRI SAI, INC., who initially formed the corporation before it is alleged that Mr. Hassam got involved.

61. Mr. Hassam admits and says he was afforded only a 49% stake because the other members of the company want to retain control over him and the said corporation.

62. Mr. Hassam owes particular duties to OM SRI SAI, INC., and owed them at the time he was soliciting Mr. Rahemtulla to join the partnership with him and transacting the said partnership venture.

63. Mr. Hassam has a duty and obligation to run the hotel and restaurant (food and beverage) operation for a contract salary of $100,000.00 per year.  Mr. Hassam has

and/or had duties to renovate the hotel and pay for the work. Also his involvement with the corporation is conditioned upon several other factors particular to the interests of the other members of the corporation and its lender. Particularly, as indicated above, if the others wanted to form a block they vote with or against Hassam and change and plans or actions he was taking with respect to the property.

64. The lender of OM SRI SAI, INC., is PMC Commercial Trust, and holds a significant mortgage on property and, in turn also had the corporation and its individual members pledge all of the fixtures, personality, accounts and stock interests as additional security.

65. From Mr. Hassam's association with OM SRI SAI, INC., he knew that the amount of revenues he represented to Mr. Rahemtulla as being applicable to their partnership operation were not realistic. Among other things Mr. Hassam knew that the location is dead and prior food and beverage operations at the hotel failed and/or were discontinued. For example, at least three (3) were seen as coming and going prior to, and at the time Mr. Hassam induced Mr. Rahemtulla to become involved with him. They were described as the Down Under; the Mount Pocono Bistro and a no name operation. At least two (2) leading franchise business such as Bennigans and Houlihans had no interest in the location since according to the defendants Howard Johnson is regarded as a low level operation and the location is not suitable for their association.

66. Similarly, while Mr. Hassam was leading Mr. Rahemtulla to become involved in the partnership under the representations that it would be able to conduct liquor sales, Mr. Hassam knew that the partnership could not perform any such liquor sales without doing so in an inappropriate and/or illegal manner. The liquor license to the facility is in the name of OM SRI SAI, INC. The Kilimanjaro partnership was a separate

entity and the liquor license of OM SRI SAI, INC., had no application to it.

67. Assuming Mr. Rahemtulla had been informed about the above, including that Mr. Hassam would take and misappropriate the money the Rahemtullas provided for the partnership; the partnership could not conduct liquor sales; the partnership operation would not generate the $2 million in revenues that Mr. Hassam said; Mr. Hassam had reserved to himself a contract salary which in part pertained to very the business the partnership was to performed; Mr. Hassam did not have the control he asserted, but rather it hinged on contract provisions with others or their nicety to him; there were significant and substantial issues about the extent of mortgage and other security interests having been given to a lender, and the partnership would not have the full scope of business, such as catering events, etc., Mr. Rahemtulla would not have proceeded with Mr. Hassam or become involved with the partnership.

68. The very fact that Mr. Hassam was not a stand alone person operating his own company as he represented by pretending he was the principal of the non-existent NJ Corporation, would have been enough for Mr. Rahemtulla not to proceed.

69. For example, Mr. Hassam knew and acknowledged that Mr. Rahemtulla would not go into business with him unless the transaction was limited to them (Mr. Rahemtulla and Mr. Hassam).

70. Mr. Hassam was clear in his understanding that Mr. Rahemtulla wanted to know with whom he was dealing and did not want to proceed if others were involved.

71. By Mr. Hassam intentionally making false affirmative statements and intentionally omitting and failing to disclose other material matters he tricked and defrauded Mr. Rahemtulla into the Partnership.

72. In August 2003 the Kilimanjaro operation started and beyond the aforesaid

fraudulent practices Hassam engaged in further failures to deal fairly, honestly, and in good faith with plaintiffs regarding the partnership.

73. The records of the partnership, including the statements of patrons show that Mr. Rahemtulla operated the business in a more than satisfactory manner.

74. No particular problems arose with the food and beverage operation under Mr. Rahemtulla's stewardship, Mr. Hassam did not fulfill his material duties to Mr. Rahemtulla or the partnership with respect to its operation.

75. To commence the partnership operations it was necessary for the partnership to employ waiters, cooks, chefs and other personnel.

76. The salaries of the employees exceeded $10,000.00.

77. Pursuant to ¶ 6 of the partnership agreement Hassam was required to capitalize the partnership so that the restaurant could commence operations in the ordinary course of business.

78. Hassam was supposed to use his money to adequately capitalize the partnership.

79. Hassam provided the partnership with an undercapitalized amount of only $1,000.00 toward its start-up of operations.

80. Paragraph 11 of the partnership agreement provided that the partners shall devote their time and attention and the utmost of their skills and ability in furtherance of the partnership business.

81. One of Hassam's specific duties was to oversee the management and expansion of the operation.

82. Hassam did not take any efforts in this regard or to develop a franchise as he promised the plaintiffs when he sought their money.

83. Instead, Hassam utilized the partnership business, assets, inventory and resources as his conduit to further his own business interests to the exclusion of the partnership.

84. For example, Hassam utilized the food, beverage and liquor inventory and other resources, including personnel of the partnership to conduct separate and competing operations at the hotel.

85. Hassam did not share the profits with the partnership; account to his partner Alnoor Rahemtulla; or reimburse the partnership for the depletion of its assets in connection with such matters.

86. Hassam regarded the sales that were generated in connection with these efforts as his alone.

87. The partnership business was supposed to be able to provided room service to the guests of the Hotel and receive the sales from such services. Initially, Hassam took 2% of the room service sales for himself before giving an accounting to the partnership. Later, Hassam discontinued giving any accounting to the partnership and, instead, kept the room service sales for himself.

88. Again, not only did Hassam divert and deplete the assets of the partnership in order to derive benefits for himself, Hassam took the partnership's food, beverage and liquor inventories to support these operations to the exclusion of the partnership.

89. Despite the plaintiffs' objections to Hassam's misuse of the partnership resources and employees, Hassam thwarted the plaintiffs' legitimate concerns by contending he could use the partnership's resources in whatever manner he desired.

90. Under ¶ 5D of the partnership agreement Hassam gave himself 51% of the interest of the partnership and under ¶ 12A of the partnership agreement he vested the

control of the partnership in himself.

91. With this control Hassam demanded the employees of the partnership who were confused by his usurpation of their devotion to the partnership business to refrain from following the requests of his partner Alnoor Rahemtulla and, instead, had them perform the work he directed.

92. The partnership was issued Federal Employer Identification No. 20-01-0138990.

93. Hassam refused to acknowledge the existence of the partnership and refused to properly address tax and payroll issues regarding its affairs and employees.

94. Particularly, Hassam did not process a corresponding Pennsylvania Unemployment Compensation account number for the partnership.

95. Hassam admitted to Alnoor Rahemtulla that he would never open an account saying that the partnership existed.

96. On or about September 25, 2003 Alnoor Rahemtulla, by and through counsel, petitioned Hassam to discontinue the partnership and to return the plaintiffs' funds. Hassam refused to comply, except to indicate that he would return the plaintiffs $340,000.00 over time.

97. Hassam threatened Alnoor Rahemtulla that if dissolution of the partnership was sought Hassam would play a lot of games.

98. Pursuant to ¶ 10 of the partnership agreement a complete accounting of the partnership affairs was to be conducted, at a minimum, on the close of business on the last day of March, June, September and December of each year. Hassam refused to participate in, and provide such an accounting to Alnoor Rahemtulla, his partner.

99. On or about October 1, 2003 Hassam had Mr. Hanyon issue a default notice

to Alnoor Rahemtulla and the partnership under the lease. Hassam was included as a responsible party under the lease, but Hassam elected to omit himself from the notice process.

100. Hassam admitted to Alnoor Rahemtulla that he utilized the lease against Alnoor Rahemtulla in order to prevent or discourage Alnoor Rahemtulla from challenging Hassam's wrongful conduct regarding the partnership business by creating a so-called liability.

101. Hassam told Alnoor Rahemtulla that he could charge or not charge whatever he wanted on the lease depending on how Alnoor Rahemtulla regarded Hassam.

102. Hassam admitted that the rental amount of $12,000.00 per month under the lease was arbitrary and without justification.

103. The name Kilimanjaro Steak House Bar & Grill was registered as a Trademark/Servicemark.

104. Since Alnoor Rahemtulla gave notice to Hassam to discontinue the partnership, Hassam engaged in the improper act of continuing to use the Trademark/Servicemark of the partnership.

105. Also Hassam continued to conduct sales without providing an accounting to Alnoor Rahemtulla, his partner.

106. Further, Hassam did not return to the plaintiffs any portion of their $340,000.00.

COUNT ONE

(Intentional Fraud)

107. The plaintiffs repeat and reiterate each and every allegation contained in the

18

previous sections of the Complaint as if set forth at length herein.

108. Hassam intentionally made material representations and purposefully omitted material information from the plaintiffs to induce Mr. Rahemtulla to become involved with the partnership and to sign the partnership documents with the intent that the plaintiffs rely on such statements and omissions

109. The plaintiffs trusted and reasonably relied on the said representations and omissions without knowing of their falsity

110. The defendant Hassam knew from the outset however that his statements to the plaintiffs were false and that his intentional omissions withheld from them material matters pertaining to the operation, which if the plaintiffs knew would have caused them not to proceed with the defendants.

111. From the out set the defendants had no plan to do what was promised to the plaintiffs in connection with the material parts of the business operation the defendants solicited Mr. Rahemtulla to join. Instead they intentionally tricked and mislead the plaintiffs into the matter through a series of intentional misstatements, misinformation, omissions and intentional conduct.

112. The tact of the defendants was particularly egregious because it was not the product of mere happenstance or a mere failure to perform certain contract terms in the future, but rather the product of a calculated effort on the part of the defendants to take advantage of the Rahemtullas for their own gain and to the significant detriment to the Rahemtullas.

113. Mr. Hassam's tack was bold and brazen to obtain the Rahemtullas' money by using the false pretenses of a business operation that was never going to be what Mr. Hassam represented it to be.

114. The defendants perpetrated a fraud against the plaintiffs by their intentional acts and omissions and the plaintiffs have been injured as a result of the said conduct.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT TWO

(Equitable Fraud)

115. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

116. The defendants made material misrepresentations of fact to, and omitted material disclosures from the plaintiffs which they reasonably relied upon.

117. The plaintiff have been injured as result thereof

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the

Court deems just and appropriate.

## COUNT THREE

### (Misappropriation)

118. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

119. Defendants misappropriated the plaintiff's funds by taking into their possession funds which the plaintiffs provided for the partnership and which the defendants were not allowed to keep or treat as their own.

120. The defendant Hassam divided the plaintiff's monies between himself and his wife and the defendant OM SRI SAI, INC.

121. Particularly, the defendant Hassam intentionally failed to abide by the trust that was placed in him to deposit the plaintiffs' funds into the partnership account and safeguard the further handling of the funds by not using them unless he and the plaintiff both signed for them.

122. The defendants had no right to treat the plaintiff's funds as their own

123. The defendants used the plaintiff's funds as their own and for their own purposes.

124. The plaintiffs requested the return of the funds, but they have not been returned.

125. As a result the plaintiffs have suffered injuries.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling

the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT FOUR

(Conversion)

126. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

127. Defendants converted the plaintiffs funds by taking their into their possession funds which the plaintiffs provided for the partnership and which the defendants had no right to keep or treat as their own.

128. The defendant Hassam divided the plaintiff's monies between himself and his wife and the defendant OM SRI SAI, INC.

129. The plaintiffs requested the return of the funds, but they have not been returned.

130. As a result the plaintiffs have suffered injuries.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT FIVE

(Intentional Violation of Fiduciary Duties)

131. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

132. As partner of the plaintiff, Hassam owed duties of honesty, good faith, loyalty and fair dealing to the plaintiff.

133. The defendant Hassam intentionally violated these duties in order to secure benefits for himself and to the significant detriment to the plaintiffs.

134. As a result of the aforesaid conduct of the defendant, the plaintiffs have been injured.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT SIX

(Breach of Fiduciary Duties)

135. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

136. As partner of the plaintiff, Hassam owed duties of honesty, good faith, loyalty and fair dealing to the plaintiff.

137. The defendant Hassam breached these duties in order to secure benefits for himself and to the significant detriment to the plaintiffs.

138. As a result of the aforesaid conduct of the defendant, the plaintiffs have been injured.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT SEVEN

(Breach of the Implied Covenant of Good Faith & Fair Dealing)

139. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

140. Hassam owed the plaintiffs a duty of good faith and fair dealing in relation to the formation of the partnership agreement and the partnership's undertakings

141. Hassam's conduct violated and breached the duty of good faith and fair dealing.

142. The plaintiffs have been injured as a result of Hassam's conduct in this regard

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership

documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

## COUNT EIGHT

### (Declaratory Relief Invalidating the Partnership Documents)

143. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

144.The Partnership documents were facilitated upon he plaintiffs as a result of defendants' intentional and/or equitable fraud.

145. As a result the partnership documents were void from their inception and have no force or effect to bind the plaintiffs.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

## COUNT NINE

### (Invalidation of Partnership Documents for the lack of a Proper Party)

146. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

147. The defendant Hassam utilized a non-existent corporate entity to transact the partnership undertaking with the plaintiffs in order to omit and withhold the true identity of parties that were actually involved with the property.

148. The defendant Hassam did this to trick and defraud the plaintiffs from learning about or knowing other material matters pertaining the circumstances of the property and the partnership transaction in order to prevent the plaintiff from backing out of the transaction and/or discontinuing their interest.

149. Since the entity used by the defendants in this regard was nonexistent and had no power or authority to transact any matter with the plaintiffs, the matter has no binding effect upon the plaintiffs and is void.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT TEN

(Rescission Based on Conflict of Interest)

150. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

151. The plaintiffs did not have counsel in relation to the formation or execution of the partnership documents.

152. The statements made by the defendant Hassam that he obtained a neutral lawyer to prepare the papers for them were false.

153. The lawyer who prepared the papers and facilitated their execution assumed dual and conflicting roles of representing all parties and Hassam only without proper authorization or proper written waivers as to all parts of the transaction.

154. The documents were not honest or fair in this light, but rather detrimental to the interests of the plaintiffs and the partnership.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT ELEVEN

(Unjust Enrichment)

155. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein.

156. The defendants obtained funds from the plaintiffs through intentional and/or equitable fraud.

157. According to the defendants part of these funds were used to benefit them

an/or improve their property to the exclusion of the plaintiffs.

158. As a result of the aforesaid conduct the plaintiffs suffered injuries and the defendants derived an unjust benefit and enrichment.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

COUNT TWELVE

(Intentional Impairment of Income/ Loss Income)

159. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein

160. At the time Hassam induced the plaintiffs to become involved in the purported partnership it was known or reasonable by Hassam that the plaintiffs would be required to forego employment and other employment opportunities in order to devote their attention to the business of the partnership

161. The partnership transaction in this matter was the product of fraud and deceit

162. Since the plaintiffs gave notice of discontinuing the partnership for such illicit, deceitful and improper conduct the plaintiffs have suffered a loss of income.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in

their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

## COUNT THIRTEEN

### (Accounting)

163. The plaintiffs repeat and reiterate each and every allegation contained in the previous sections of the Complaint as if set forth at length herein

164. As a partner and under the Partnership Documents Hassam is required to provide an accounting to Mr. Rahemtulla.

WHEREFORE, the plaintiffs demand that a declaratory judgment be entered in their favor and against the defendants invalidating the purported partnership documents; enjoining and restraining the defendants from conveying, encumbering, transferring, or in any way disposing of any of their assets, real or personal, compelling the defendants to disgorge and return to the plaintiffs their $340,000.00, awarding compensatory, consequential, incidental and punitive damages to the plaintiffs against the defendants, together with attorney's fees, interest, costs and such other relief as the Court deems just and appropriate.

## COUNT FOURTEEN

### (Violation of Lanham Act)

165. The name of the partnership was a registered mark of the plaintiff.

166. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a) provides, in pertinent part, that any person who uses any reproduction of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services, without the consent of registrant, shall be liable in a civil action.

167. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in pertinent part, that any person who uses any word, term, name, or symbol which is likely to cause confusion or mistake or deceives as to affiliation, or approval of the sale of goods or services shall be liable in a civil action.

168. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c) provides, in pertinent part, that the owner of a mark shall be entitled to an injunction, subject to the principles of equity and upon such terms as the court deems reasonable.

169. Hassam's use of the Kilimanjaro Steak House Bar & Grill Trademark/Servicemark in connection with the defendants sale, offering for sale, distribution, and advertising of goods and services after Alnoor Rahemtulla gave notice of the cease and desist, constituted a violation of the Lanham Act.

170. Upon the plaintiff giving notice of the discontinuation of the partnerships on the grounds of fraud the plaintiff also demand that the defendants cease and deists from using the aforesaid registered marks.

171. Since the plaintiffs gave notice of discontinuing the partnership for such illicit, deceitful and improper conduct the defendants continued to use the marks in violation of the Lanham Act

172. As a result of the foregoing the defendants derived unjust benefits and the plaintiffs suffered injuries.

<u>PLAINTIFFS HEREBY DEMAND A JURY TRIAL</u>

_____
Robert M. Vreeland

Dated May 1, 2007

<u>CERTIFICATION</u>

I, Robert M. Vreeland, certify that to the best of my knowledge this matter in controversy

is not the subject of any other proceeding, except a writ of Summons was filed on behalf

of the plaintiffs in the State of Pennsylvania and withdrawn prior to the commencement

of this action

_____
Robert M. Vreeland

Dated May 1, 2007