## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALNOOR RAHEMTULLA and SHYROSE RAHEMTULLA,** | : | |
| | : | **CIVIL ACTION NO. 3:05-0198** |
| **Plaintiffs** | : | |
| | : | **(MANNION, M.J.)** |
| **v.** | : | |
| | : | |
| **NAZIM HASSAM, a/k/a NAZIM B. HASSAM, a/k/a HAZIM B. HASSAM, a/k/a NAZIM HASIAM, t/a HOWARD JOHNSON INN; SHAMSHAD N. HASSAM, a/k/a SHAMIM B. HASSAM, a/k/a SHAMI-HASSAM; OMSRISHI, INC., a fictitious entity; KILIMANJARO STEAKHOUSE BAR & GRILL; JOHN and JANE DOES 1-100, fictitious persons; ABC and XYZ CORPORATIONS 1-100, fictitious entities,** | : : : : : : : | |
| | : | |
| **Defendants** | : | |
| | : | |

## MEMORANDUM AND ORDER

Pending before the court is the defendants' Motion to Dismiss the Amended Complaint, (Doc. No. 65), and the plaintiffs' Motion for partial[1] Summary Judgment, (Doc. No. 70). After careful review of the pleadings and evidence submitted in support thereof, as well as the applicable law that governs this case, the defendants' motion will be granted in part and denied

---

[1] Although not captioned as a motion for partial summary judgment, the plaintiffs' motion will be construed as such because, as further detailed below, they only move on eight of the fourteen counts set forth in their First Amended Complaint, (Doc. No. 61).

in part, and the plaintiffs' motion is denied.

## I.     Procedural History

This matter arises out of the formation and operation of the Kilimanjaro Steak House Bar & Grill, a Pennsylvania General Partnership between the plaintiff, Alnoor Rahemtulla – a resident of New Jersey, and the defendant, Nazim Hassam – a resident of Pennsylvania.  More specifically, the case involves allegations that Mr. Hassam fraudulently induced Mr. Rahemtulla into entering a partnership, which through a calculated plan of making empty promises and withholding crucial information, caused Mr. Rahemtulla to invest $340,000 towards what he believed to be his contribution to the partnership, when such funds were instead misappropriated and commingled with the other defendants for other purposes.  On March 31, 2004, the plaintiffs commenced this action in the United States District Court for the District of New Jersey, claiming, inter alia, fraud, misappropriation, conversion, breach of fiduciary duties, and unjust enrichment, and seeking an invalidation of the partnership documents, a disgorgement and return of the monies which they invested in the partnership, compensatory and punitive damages, and attorney's fees and costs. (Doc. No. 1). Id.  The defendants having filed a motion to dismiss and/or change venue, by order dated January 10, 2005, the District of New Jersey directed that the matter be transferred to the Middle District of Pennsylvania. Upon transfer, the parties consented to the

2

jurisdiction of the undersigned on March 29, 2005.  (Doc. No. 9).

On June 11, 2007, the plaintiffs filed an amended complaint, which sets forth the following fourteen counts: Count I - Intentional Fraud; Count II - Equitable Fraud; Count III - Misappropriation; Count IV - Conversion; Count V - Intentional Violation of Fiduciary Duties; Count VI - Breach of Fiduciary Duties; Count VII - Breach of the Implied Covenant of Good Faith & Fair Dealing; Count VIII - Declaratory Relief Invalidating the Partnership Documents; Count IX - Invalidation of Partnership Documents for the lack of a Proper Party; Count X - Rescission Based on Conflict of Interest; Count XI - Unjust Enrichment; Count XII - Intentional Impairment of Income / Loss of Income; Count XIII - Accounting; and Count XIV - Violation of the Lanham Act. (Doc. No. 61).  They continue to seek a disgorgement and return of the $340,000 they invested in the partnership, as well as declaratory and injunctive relief, monetary damages, and attorney's fees and costs.  Id.  On July 3, 2007, the plaintiffs filed the instant motion for partial[2] summary judgment, (Doc. No. 70), together with a supporting brief, (Doc. No. 71), and statement of material facts, (Doc. No. 72).  Various exhibits were also filed.

---

[2] From the pleadings and briefs submitted, the plaintiffs are only moving for summary judgment on the issues of fraud (combining Counts I and II); misappropriation (Count III); conversion (Count IV); breach of fiduciary duties (combining Counts V, VI, and VII); and unjust enrichment (Count XI).  None of the other counts are addressed, including Counts VIII, IX, X, and XIII, which seem to identify relief that must be decided by the court, not a jury.  In addition, no motion was made regarding Counts XII and XIV, hence, the plaintiffs' motion must be construed as a motion for partial summary judgment.

(Doc. Nos. 77-81).  On July 6, 2007, the defendants filed the instant motion to dismiss the amended complaint.  (Doc. No. 65).  The defendants also filed a brief in opposition to the plaintiffs' motion for summary judgment, (Doc. No. 86), a statement of material facts and response to the plaintiffs' statement of facts, (Doc. Nos. 88-89), and two affidavits, (Doc. Nos. 90-91), on August 17, 2007.  The defendants filed a brief in support of their motion to dismiss on August 21, 2007.  (Doc. No. 92).[3]  On September 14, 2007, the plaintiffs filed a reply to the defendants' opposition to summary judgment.  (Doc. No. 97). This matter is now ripe for disposition.

## II.    Applicable Law

The parties disagree as to whether the court should apply New Jersey or Pennsylvania law in this case.  It is well settled that in diversity actions, a federal court determines which state's substantive law governs by applying the choice of law rules of the forum state in which it sits.  Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005) (citing  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Pennsylvania courts generally apply a two-step analysis: "[F]irst, the court must look to see whether a false conflict exists.  Then, if there is no false conflict, the court

---

[3] It should be noted that the defendants' brief in support of their motion to dismiss is exactly the same document, verbatim, as their brief opposing summary judgment. The only differences are the filing dates and the description of each document on ECF.

4

determines which state has the greater interest in the application of its law."

LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996) (citing Cipolla

v. Shaposka, 267 A.2d 854 (Pa. 1970)); see also Hughes v. Prudential Lines,

Inc., 624 A.2d 1063, 1066 n.2 (Pa. Super. Ct. 1993). However, where there

is a contractual choice of law or forum selection clause set forth by the parties,

Pennsylvania courts will enforce the contractual provision

> unless either (a) the chosen state has no substantial relationship
> to the parties or the transaction and there is no other reasonable
> basis for the parties' choice, or (b) application of the law of the
> chosen state would be contrary to a fundamental policy of a state
> which has a materially greater interest than the chosen state in
> the determination of the particular issue.

Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007) (quoting Restatement

(Second) of Conflict of Laws § 187(2)(1988)); see also  Novus Franchising

Inc. v. Taylor, 795 F. Supp. 122, 126 (M.D. Pa. 1992); Schifano v. Schifano,

471 A.2d 839, 843 n.5 (Pa. Super. Ct. 1984). In this case, the Kilimanjaro

Steak House Bar & Grill (hereinafter "the Partnership") executed a commercial

property lease of premises within the Howard Johnson Inn, located in

Bartonsville, Pennsylvania. (Doc. No. 79-7 Ex. F). The final paragraph of the

lease agreement states as follows: "Controlling Law.  This lease shall be

governed by the laws of the Commonwealth of Pennsylvania." Id. ¶ 32.

The court will honor this contractual choice of law provision because

neither exception in Restatement (Second) of Conflict of Laws § 187(2)

applies.[4]  First, Pennsylvania clearly has a substantial relationship to both the parties and the transactions.  Not only is the Howard Johnson Inn located in Pennsylvania, but the Partnership was also registered in Pennsylvania, the parties executed the Partnership Agreement and the Commercial Property Lease in Pennsylvania, the bank accounts at issue were located in Pennsylvania, and the parties were to carry out their respective Partnership obligations in Pennsylvania.  See (Doc. Nos. 79-5, 79-7 Exs. D, F).  Although the plaintiffs argue that many of the predicate acts of fraud occurred in New Jersey, there is clearly a reasonable basis to apply Pennsylvania law. Second, while the plaintiffs rightfully maintain that New Jersey has a strong governmental interest in protecting its citizens from fraud, Pennsylvania holds the materially greater interest due to the nature of the Partnership, the location of where the parties executed the agreements, and the situs of the property which is the subject of the transaction.  Accordingly, this court sees no reason to disturb the parties' contractual choice of law.  Pennsylvania substantive law shall apply to this case.

---

[4] A central argument of the plaintiffs' is that Alnoor Rahemtulla was fraudulently induced to enter into the partnership agreement and commercial property lease, which therefore renders the partnership documents invalid and of no legal effect. However, as explained infra, both the Partnership Agreement and lease are valid and enforceable such that this court may rely upon them and the provisions contained therein.

III.    **Standard of Review**

**Motion to Dismiss**

The defendants' motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Review of a motion to dismiss is limited to the face of the plaintiff's complaint, whereby the court must accept all factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor.  Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)); NAPA Transp., Inc. v. Travelers Prop. Cas., No. 06-cv-1866, 2006 U.S. Dist. LEXIS 84166, at *4 (M.D. Pa. Nov. 20, 2006). A court may also consider the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which the plaintiff has identified as the basis of his or her claim.  Delaware Nation v. Pennsylvania,446 F.3d 410, 413 n.2 (3d Cir. 2006) (citing  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

To prevail on a Rule 12(b)(6) motion, the defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  Martella v. Wiley, No. 06-cv-1702, 2007 U.S. Dist. LEXIS 28242, at *9 (M.D. Pa. Apr. 17, 2007) (citing Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)); see also F. R. Civ. P.

12(b)(6).  Under the federal notice pleading standard, "a complaint requires only 'a short and plain statement' to show a right to relief, not a detailed recitation of the proof that will in the end establish such a right."  Pryor v. NCAA, 288 F.3d 548, 564 (3d Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)); F. R. Civ. P. 8(a)(2). Because of this liberal pleading policy, a court should not grant dismissal unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Trump Hotel & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998) (holding that dismissal is appropriate "only if . . . no relief could be granted under any set of facts consistent with the allegations of the complaint"); accord Martella, 2007 U.S. Dist. LEXIS at *8.


**Motion for Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive

law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995).  At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations).  Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323-24.  The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325.  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)); see also Celotex Corp., 477

U.S. at 325 (stating that the non-moving party cannot simply reassert factually unsupported allegations contained in its pleadings in opposing summary judgment). However, if the non-moving party fails to make a sufficient showing that a genuine issue of material fact exists, Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## IV.   Undisputed Facts[5]

From the pleadings and exhibits submitted herewith, the following material facts can be ascertained as undisputed:

---

[5] It should be noted that although the defendants filed both a statement of material facts, (Doc. No. 88), and a response to the plaintiffs' statement of material facts, (Doc. No. 89), neither document complies with Local Rule 56.1. Local Rule 56.1 provides, "The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [of the moving party] . . . as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." M.D. Pa. L.R. 56.1 (emphasis added); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986) (to survive summary judgment, the non-moving party must present more than a mere scintilla of evidence supporting his claims). The defendants merely enumerated those statements of plaintiffs' to which they agreed, and then "denie[d] all of the other allegations contained in the Statement of Material facts and contend[ed] that they contain genuine issues to be tried," without citing to any supporting evidence in the record. (Doc. No. 89). Consequently, all material facts set forth by the moving plaintiffs will be deemed admitted, provided that they cite to evidence in the record that accurately supports their statements.

**Formation of the Partnership**

Alnoor Rahemtulla and his wife, Shyrose, first met Nazim Hassam and his wife, Shamshad Beugm, by attending the same religious congregation. (S. Hassam Dep. 53:16-25). Their friendship developed such that the Hassams were often guests in the Rahemtullas' New Jersey home. Id. 55:2-10; (N. Hassam Dep. 89:7-24). Towards the end of 2002, Mr. Rahemtulla and Mr. Hassam agreed to enter into a business relationship concerning the operation of a restaurant in the Howard Johnson Inn located in Bartonsville, Pennsylvania.[6] (N. Hassam Decl. 7/13/04 ¶¶ 8, 9). The restaurant was to be called Kilimanjaro Steak House Bar & Grill, a Pennsylvania General Partnership, and was to sell both food and liquor. Id. ¶ 9. Although Mr. Hassam, an experienced businessman, was well aware that Mr. Rahemtulla had no experience in the food and beverage industry, he was willing to help guide and oversee Mr. Rahemtulla in the Partnership. (N. Hassam Dep. 84: 1-25, 224:19-23, 227:5-24). In order to commit himself wholeheartedly to the Partnership venture, Mr. Rahemtulla resigned from his employment with IBM. (Doc. No. 78 ¶ 24).

On January 31, 2003, Mr. Rahemtulla delivered a check to Mr. Hassam in the amount of $25,000 as a deposit towards his purchase of the

---

[6] Mr. Rahemtulla avers that one reason why he chose to enter into the restaurant business is because Mr. Hassam allegedly projected that the revenues would be approximately $2 million per year. (Doc. No. 78 ¶ 14).

Partnership.[7]  (Doc. No. 9 Ex. A).  Mr. Hassam deposited the $25,000 into an

account owned jointly by him and his wife at First Union National Bank in

Mount Pocono, Pennsylvania.  (Doc. No. 80-9 Ex. AA p. 1).  On February 13,

2003, Mr. Rahemtulla and Mr. Hassam met in Pocono Summit, Pennsylvania

at the law offices of Merwine, Hanyon & Kaspszyk, LLP to execute the

relevant partnership documents. (Doc. Nos. 72 ¶¶ 121, 123, 89 ¶ 1). They

affixed their signatures before two witnesses: Mrs. Rahemtulla and Mr.

Hassam's lawyer, Joseph Hanyon.  Id. Mr. Rahemtulla was not represented

by any counsel during the course of the Partnership negotiations.[8]  (J. Hanyon

_____

[7]  The plaintiffs state that this money was obtained by borrowing against the equity in their home.  (Doc. No. 72 ¶ 116).  To support this statement, they cite to the transcript from the preliminary injunction hearing that was held on November 1, 2005.  Because the court does not automatically order hearing transcripts for itself, and because this particular transcript was not provided as an exhibit, the court cannot consider the transcript as evidence for summary judgment purposes.  The same premise holds true for whenever the plaintiffs cite to "Hassam Interrog. Ans."  A party's request for interrogatories and the subsequent answers thereto are merely exchanged between both sides during discovery and are not filed with the court.  Consequently, a party who relies upon answers to interrogatories in a motion for summary judgment is obligated to supply the court with the relevant exhibit. Because the plaintiffs have not supplied the court with Mr. Hassam's answers to their interrogatories, whatever statements he allegedly made cannot be considered for summary judgment purposes.

[8] In discussing whether Mr. Rahemtulla should seek legal representation in the matter, Mr. Hassam told Mr. Rahemtulla that he has "a lawyer that play[s] on neutral ground," referring to Joseph Hanyon. (N. Hassam Dep. 240-241). Mr. Rahemtulla claims that he was misled into believing that a neutral lawyer would draft the relevant documents, because Mr. Hanyon believed that he only represented Mr. Hassam and was unaware that he was supposed to

Dep. 46:1-12).  The partnership documents consisted of (I) a Partnership Agreement[9] forming the Kilimanjaro Steak House Bar & Grill; (ii) a promissory note in the amount of $150,000 that would be paid in monthly installments by Mr. Rahemtulla to Mr. Hassam; and (iii) a Commercial Property Lease[10] between the Partnership and the lessor, OMSRISHI, Inc., a New Jersey Corporation.  (Doc. Nos. 79-5 - 79-7, Exs. D-F).

**OMSRISHI, INC. or OM SRI SAI, INC.**

On the Commercial Property Lease, Mr. Hassam signed his name on behalf of OMSRISHI, Inc. as the President of OMSRISHI, Inc. (Doc. No. 79-7

---

act in a neutral capacity.  (Doc. No. 72 ¶ 120; J. Hanyon Dep. 47:7-24).

[9] The Partnership Agreement contains an integration clause: "Sole Agreement.  This instrument contains the sole agreement of the parties relating to their Partnership and correctly sets forth the rights, duties, and obligations of each to the other in connection with it as of its date.  Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force or effect."  (Doc. No. 79-5 Ex. D ¶ 23).

[10] The Lease also contains an integration clause: "Agreement Contains All Agreements.  It is expressly understood and agreed by and between the parties that this lease and the riders attached to it and forming a part of it set forth all the promises, agreements, conditions and understandings between Lessor or its Agent and Lessee relative to the Demised Premises, and that there are no promises, agreements, conditions or understandings, either oral or written, between them other than are set forth.  It is further understood and agreed that, except as otherwise provided, no subsequent alteration, amendment, change or addition to this lease shall be binding upon Lessor or Lessee unless reduced to writing and signed by them."  (Doc. No. 79-7 Ex. F ¶ 28).

Ex. F p. 15).  In the Partnership Agreement, Mr. Hassam also declared that he "is the President and a shareholder of Omsrishi, Inc., a New Jersey Corporation.  Omsrishi, Inc. is the property owner upon which the business of the partnership is to be situated within the Howard Johnson Inn." (Doc. No. 79-5 Ex. D ¶ Recitals).  Despite these representations, Mr. Hassam admits that at the time he signed the Partnership documents, he was neither the President nor a shareholder of OMSRISHI, Inc., that he had not taken any steps to form or incorporate OMSRISHI, Inc. within New Jersey, and that he did not have any rights exclusive or otherwise, flowing from OMSRISHI, Inc. (Doc. No. 79-14 Ex. M p. 2 ¶¶ 5-9, p. 7 ¶¶ 5-9).  OMSRISHI, Inc. was essentially a nonexistent entity in New Jersey.  (Doc. No. 79-8 Ex. G).

Rather, a Pennsylvania corporation named OM SRI SAI, Inc. has owned the Howard Johnson Inn in Bartonsville, Pennsylvania since 2000. (Doc. No. 91 ¶¶ 1-2).  In February 2003, the officers, directors, and shareholders of the defendant OM SRI SAI, Inc. were Kirit "Curtis" Patel, Babu Patel, Bipin Patel, Urvashi Parikh, and Nazim Hassam.  Id. ¶ 3.  Mr. Hassam is a 49% shareholder of OM SRI SAI, Inc. (Doc. Nos. 80-6 Ex. X; 90 ¶ 4).  Mr. Hassam asserts that during his negotiations with Mr. Rahemtulla, he believed that not only was he President of OM SRI SAI, Inc., but also that OM SRI SAI was a New Jersey rather than a Pennsylvania corporation, and that it was spelled OM SRI SHI. (Doc. No. 90 ¶¶ 5-6).  Mr. Hassam further asserts that regardless of whether OM SRI SAI was spelled correctly in the Partnership

14

documents or whether it was a New Jersey or Pennsylvania corporation, their Partnership was still valid.  Id. ¶ 7.  Mr. Curtis Patel also avers that

> [t]he reference to OMSRISHI, Inc. as lessor [in the Commercial Lease Agreement] is a mistake. The lessor should have been listed as OM SRI SAI, Inc. The officers, directors and shareholders of OM SRI SAI, Inc. authorized this lease agreement with Nazim Hassam and Alnoor Rahemtulla and intended to lease the Howard Johnson Inn restaurant to them under the terms set forth in the agreement.

(Doc. No. 91 ¶ 5).  Nevertheless, the plaintiffs contend that Mr. Hassam's failure to inform them that his "use of OMSRISHI, Inc. was false and just a concoction on his part or that he was avoiding and hiding the circumstances that pertained to the [Howard Johnson] Hotel property; the fact that others were involved; and that complications existed. . . . [was part of] a series of intentional and calculated omissions" to defraud the plaintiffs.  (Doc. No. 72 ¶¶ 54, 174).

**Partnership Duties and Obligations**

With respect to Mr. Rahemtulla's purchase of his interest in the Partnership, the Partnership Agreement provides as follows:

> **Purchase of Partnership Interest**
> A.  Alnoor A. Rahemtulla shall purchase 49% of the Partnership from Nazim Hassam for the sum of FIVE HUNDRED THOUSAND AND 00/100 ($500,000) DOLLARS which shall be paid as follows:
> A.  The sum of $25,000 is acknowledged as received from Alnoor A. Rahemtulla by Nazim Hassam.
> B.  The sum of $325,000 shall be paid upon the execution of this Agreement by Alnoor A. Rahemtulla to Nazim Hassam.
> C.  The sum of $150,000.00 shall be paid by Alnoor A. Rahemtulla to Nazim Hassam consistent with a promissory note . . . .

15

B. The foregoing sums shall be deposited into an account established in the partnership name at First Union Bank.  Nazim Hassam and Alnoor A. Rahemtulla shall have signatory powers for said account, however the account may not be drawn upon without the signature of each Nazim Hassam and Alnoor A. Rahemtulla.

C. No part of the $500,000 as set forth above shall be considered an initial contribution for the start up of the Partnership. Such sum is considered only as consideration for the right to use and operate the facility as more defined in the Commercial Lease Agreement.

D. Nazim Hassam shall retain 51% of the interest of the Partnership.

(Doc. No. 79-5 ¶ 5).  Upon execution of the agreements, Mr. Rahemtulla provided Mr. Hassam with an additional $315,000 towards his 49% ownership interest, for a total contribution of $340,000.  (Doc. No. 79 Ex. A).  However, Mr. Hassam never intended to deposit this money into a Partnership account:

> Q:    When you got Mr. Rahemtulla's money, is it safe to assume you intended not to put it into the partnership account?
> A:    Correct.  That was not intend[ed] to be.
> Q:    Okay.  It was your intent to pay it over to yourself?
> A:    Correct.
> Q:    Okay.
> A:    And that's why Mr. Rahemtulla had made those checks personally to me. The partnership account was opened way after that.[11]

(N. Hassam Dep. 273:25-274:1-10).  Rather than deposit the $315,000 into

---

[11]    Mr. Rahemtulla claims that he made the checks payable to Mr. Hassam personally only because the Partnership was not formally registered at the time.  (Doc. No. 72 ¶ 142).  An actual Partnership account was not opened at First Union National Bank until July 21, 2003, with a deposit of only $1,000.  (Doc. No. 80-3 Ex. U).  Mr. Hassam maintains that the money was his. (N. Hassam Dep. 273:9-12); see also (Doc. No. 79-14 Ex. M p. 7 ¶ 14) ("[T]he money belonged to Hassam.").

an account established in the Partnership name at First Union National Bank

("First Union") as per the Partnership Agreement, Mr. Hassam deposited the

money into accounts or cashed the checks against accounts he jointly owned

with his wife or with Curtis Patel and OM SRI SAI, Inc at First Union in Mount

Pocono, Pennsylvania. (Doc. No. 79-14 Ex. M p. 3 ¶¶ 17-19, p. 7 ¶¶ 17-19).

Specifically, four separate checks totaling $195,000 were deposited—at

different times during February and March 2003—into an account owned by

Mr. Hassam and his wife.[12] (Doc. Nos. 79 Ex. A; 80-9 Ex. AA p. 5).  A check

for $120,000 was also deposited into an account owned by Mr. Hassam,

Curtis Patel, and OM SRI SAI, Inc. (Ex. AA p. 18).  Mr. Rahemtulla states that

he "would not have supplied the money if the safeguards [set forth in ¶5(B) of

the Partnership Agreement] did not apply." (Doc. No. 72 ¶¶ 117, 133-34).  Mr.

Hassam has not returned any part of the $340,000 to the plaintiffs. (Doc. No.

79-14 Ex. M p. 7 ¶ 23).

The restaurant commenced operation on August 11, 2003.  Howard

Johnson required the Kilimanjaro Steak House Bar & Grill to be a full-service

restaurant and provide three meals a day – breakfast, lunch, and dinner.

(Doc. No. 80-2 Ex. T p. 44) ("Howard Johnson Inns are designed to be full

service properties.  They are required to have a full menu service restaurant

with 3 meal periods."); (K. Patel Dep. 60:1-19).  However, the restaurant did

---

[12] Mrs. Hassam understood that she shared the bank account with her
husband. (S. Hassam Dep. 46:3-11).

not serve lunch because, according to Mr. Hassam, "it [was] not worth the investment." (N. Hassam Dep. 201:17 - 202:11).  The restaurant was also established for the purpose of serving alcohol, provided that it had a liquor license.  (Doc. No. 79-7 Ex. F ¶ 6).  However, the Partnership did not obtain a liquor license; rather, a valid license only belonged to OM SRI SAI, Inc. (Doc. No. 80-5 Ex. W).

With respect to their time devoted to the Partnership, the parties agreed that Mr. Rahemtulla "shall devote his full time and undivided attention to the affairs of the partnership, including without limitation, the day to day operation of the restaurant(s) which shall be open seven (7) days each week," and would be given a $500 weekly salary during the first month of the restaurant's operation, and $1,000 per week thereafter.  (Doc. No. 79-5 Ex. D ¶¶ 11, 13). In addition, Mr. Hassam "shall oversee the management and expansion of the restaurant."[13]  Id. ¶  11.  Mr. Hassam was also responsible for initially

---

[13]    This clause of the agreement also acknowledged that "Nazim Hassam has numerous other businesses which require his time and talents." (Doc. No. 79-5 Ex. D ¶ 11). In fact Mr. Hassam intended to operate a separate banquet business out of the same kitchen. (N. Hassam Dep. 272:5-15, 284:8-25, 286:2-14). Although the plaintiffs assert that "[t]here was not supposed to be any side or competing business . . .to be conducted separate and apart from the partnership or by and through a competing operation conducted by Mr. Hassam or any other person or entity," Mr. Hassam maintains that during his negotiations with Mr. Rahemtulla, he made it clear that the banquets and other special events at the Howard Johnson Inn were not part of the Partnership.  (Doc. Nos. 72 ¶ 27; 90 ¶ 3).  The plaintiffs dispute that this discussion occurred.

capitalizing the Partnership and could be reimbursed for such capital expenditures. Id. ¶ 6.

One month after the restaurant opened, Mr. Rahemtulla came to believe that this was not an arms length transaction, and that "there was never going to be any partnership that was promised to [him] and that the Rahemtullas had been completely and wholly duped by the defendants from the start." (Doc. No. 72 ¶ 168). Mr. Rahemtulla therefore departed from the Partnership in November 2003. It is unclear whether the Partnership officially dissolved.

## V.    Discussion

As a threshold matter, the court must address the plaintiffs' claims that the relevant Partnership documents are invalid and have no legal effect because OMSRISHI, Inc. was a fictitious entity. (Doc. No. 97-4 p. 4). This discussion begins with the Supreme Court of Pennsylvania's observation that a partnership is created by contract; a partnership is formed just like all contracts are formed, through agreements. Murphy v. Burke, 311 A.2d 94, 906 (Pa. 1973); O'Donnell v. McLoughlin, 125 A.2d 370, 372 (Pa. 1956) ("A true partnership relation flows from a contract between the parties."). It is therefore well settled that a written partnership agreement setting forth the terms of the partnership and the duties and privileges of the parties is a contract and must therefore be interpreted according to state contract law. See McClimans v. Barrett, 419 A.2d 598, 600 (Pa. Super. Ct. 1980) (holding

19

that "[a] partnership agreement as a contract must be interpreted in accordance with the intent of the parties and each part of the contract must be taken into consideration and given effect."). Likewise, leases are in the nature of contracts and are also controlled by principles of contract law. Willison v. Consolidation Coal Co., 637 A.2d 979, 982 (Pa. 1994) (explaining that leases are "to be construed in accordance with the terms of the agreement as manifestly expressed"); see also Amoco Oil Co. v. Snyder, 478 A.2d 795, 798 (Pa. 1984) (applying contract law to commercial property lease); 2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies, 466 A.2d 132, 136 (Pa. Super. Ct. 1983) (same). Accordingly, both the Partnership Agreement and the Commercial Property Lease are viewed as contracts between the parties.

The plaintiffs specifically argue that "[a] contract cannot be formed with a non-existing party or by virtue of an extension of rights that cannot come from a non-exist [sic] entity."[14] Id. To the contrary, under the Pennsylvania Fictitious Names Act, 54 Pa. Cons. Stat. Ann. §§ 301-332 (2007), the failure of a corporation to register its name does not render any contract into which it enters, invalid: "The failure of any entity to register a fictitious name as required by this chapter shall not impair the validity of any contract or act of such entity and shall not prevent such entity from defending any action in any

---

[14] Here, the plaintiffs do not cite to any case law or statute in support of their argument.

20

tribunal of this Commonwealth."[15] Id. § 331(a) (emphasis added).  Therefore, the validity of either the Partnership Agreement or the Commercial Property Lease is not at issue, regardless of whether Mr. Hassam held out OMSRISHI, Inc. as being a legal entity by mistake or by fraud.[16]

The plaintiffs further argue that the documents are invalid because Mr. Rahemtulla never entered into an agreement with OM SRI SAI, Inc. (Doc. No. 97-4 pp. 4-5). This argument is unpersuasive because Mr. Hassam acted as an agent for either OMSRISHI, Inc. or OM SRI SAI, Inc. He signed his name on the corporation's behalf, and the corporation is bound by the acts of its officers and agents done within the scope of their actual or apparent authority. See Great N. Ins. Co. v. ADT Sec. Servs., Inc., 517 F. Supp. 2d 723, 745 (W.D. Pa. 2007) ("Under Pennsylvania law, an agent can bind its principal based on express (actual) authority or apparent authority."); Rinaldi v. Bd. of Vehicle Mfrs., 843 A.2d 418, 421 (Pa. Commw. Ct. 2004) ("[C]orporations 'are necessarily required to conduct their business through agents and they are bound by the acts of their representatives within the apparent scope of the

---

[15] New Jersey also has a substantially similar statute, which provides: "The failure of a corporation to file a certificate of registration or renewal of alternate name shall not impair the validity of any contract or act of such corporation and shall not prevent such corporation from defending any action or proceeding in any court of this State . . . ."  N.J. Stat. Ann. § 14A:2-2.1(6) (2007).

[16] Because OMSRISHI, Inc. has been identified as a valid party to the contract, the plaintiffs' Count IX, Invalidation of Partnership Documents for the lack of a Proper Party, will be dismissed.

business with which they are entrusted.'") (internal citation omitted).

Accordingly, the applicable Partnership documents are considered

enforceable contracts between the parties.[17]

## Fraud

In their amended complaint, the plaintiffs advance two separate claims

for fraud: intentional fraud and equitable fraud. (Doc. No. 61). Under

Pennsylvania common law, equitable fraud is, in essence, "a 'creditor's bill' to

reach a debtor's equitable assets." Universal Computer Consulting, Inc. v.

Pitcairn Enters. Inc., 2005 WL 2077269, at *16 (E.D. Pa. Aug. 26, 2005)

(citing United States v. Kensington Shipyard & Drydock Corp., 187 F.2d 709,

---

[17] The plaintiffs would like the court to take into account the degree of
each party's sophistication during the negotiation process. (Doc. No. 71 p. 9).
They argue that because they had no experience concerning business
matters, whereas Mr. Hassam had superior knowledge and experience, they
trusted that Mr. Hassam would obtain a "neutral" lawyer. Id.  The fact that
Joseph Hanyon, Esq. was not a neutral party in drafting the relevant
Partnership documents coupled with the fact that the plaintiffs were not
represented in the matter does not make the contracts unconscionable when
formed. "A determination of unconscionability requires a two-fold
determination: 1) that the contractual terms are unreasonably favorable to the
drafter; and 2) that there is no meaningful choice on the part of the other party
regarding the acceptance of the provisions." McNulty v. H&R Block, Inc., 843
A.2d 1267, 1273 (Pa. Super. Ct. 2004). Neither factor is evident in this case.
In both contracts, the terms do not appear to unreasonably favor either Mr.
Rahemtulla or Mr. Hassam. In addition, this is not a situation where the
plaintiffs signed an adhesion contract, which is typically a "form contract
prepared by one party, to be signed by the other party in a weaker position
[usually] a consumer, who has little choice about the terms." Id.

712 (3d Cir. 1951)). The district court explained that "[t]he purpose of a creditor's bill is to subject the debtor's property, which has been conveyed away in fraud of creditors, to the claims of the creditors by setting aside and voiding the fraudulent conveyance." Id. (internal citations omitted).   The district court also noted, however, that the "creditor's bill" has largely been displaced by the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. Cons. Stat. Ann. §§ 5101-5110 (2007), which provides creditors with certain remedies, including avoidance, when a debtor makes a fraudulent transfer. Id. at *7, 16.  It therefore appears that equitable fraud is no longer a cause of action in Pennsylvania.[18]  Clearly, neither the "creditor's bill" nor the Pennsylvania Uniform Fraudulent Transfer Act has any relevance or application to the instant case.  The plaintiffs' Count II alleging equitable fraud must therefore be dismissed as a matter of law.

With respect to intentional fraud, which is a cause of action in Pennsylvania, the plaintiffs principally allege that Mr. Hassam fraudulently induced Mr. Rahemtulla into entering the Partnership "based upon promises made with an undisclosed intention not to perform and through a series of intentional and calculated omissions."  (Doc. No. 71 p.5).  The plaintiffs

---

[18]   The court recognizes, however, that equitable fraud remains a common law cause of action in New Jersey.  See, e.g., Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006) (citing Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981); Weil v. Express Container Corp., 824 A.2d 174, 182 (N.J. Super. Ct. App. Div. 2003)).

identify various reasons why they were defrauded:

> [Nazim Hassam] knew from the outset that he was going to take the plaintiffs' money and never put it into the partnership account, despite his promises to the contrary. [Nazim Hassam] knew the partnership could not perform the business it was supposed to perform. Among other things, there could be no liquor sales because it had no license.  Also, other key parts of its operation such as banquets and special events were never going to be provided.  In reality, [Nazim Hassam's] tact of steering the plaintiff into the so-called partnership was nothing more than a means for him to obtain their money under false pretenses and leave them in the wake of a bank debt against their home.

(Doc. No. 71 p.8).  In essence, Mr. Rahemtulla would have never entered the Partnership had he known that the statements Mr. Hassam made "to induce their trust and confidence to join the partnership were false."  (Doc. No. 72 ¶ 94).  As Mr. Rahemtulla avers,

> From the outset, [Nazim Hassam] had no intent or design to do what he promised Mr. Rahemtulla in connection with the material parts of the business operation he solicited Mr. Rahemtulla to join. . . . Had the above matters been properly and fairly disclosed to us I would have never gotten involved with Mr. Hassam and I would have never borrow[ed] against my home to be involved with an operation that was never going to be from the start.

(Doc. No. 78 ¶¶ 177, 48).

The defendants summarily deny that Mr. Hassam ever made any material fraudulent misrepresentations which induced Mr. Rahemtulla to enter into the Partnership.  (Doc. No. 86 p. 18).  The defendants also rely upon the fact that the Partnership Agreement contains an integration clause.  Id. p. 19.  Because there is an integration clause, the defendants argue, the parol evidence rule precludes the plaintiffs from introducing any evidence that Mr.

Rahemtulla was fraudulently induced into entering the Partnership, and thus the claim for fraud is barred. Id. pp. 19-22. With respect to their motion to dismiss, the defendants argue that all of the plaintiffs' tort claims, including fraud, fundamentally sound in contract, not in tort, and under Pennsylvania's "gist of the action" doctrine, tort claims cannot be maintained when they essentially duplicate an action for breach of the underlying contract. Id. pp. 27-28; (Doc. No. 65).

It has long been held that the parol evidence rule bars evidence of prior representations in a fully integrated written agreement.[19] Haymond v. Lundy 2000 WL 804432, at *6-7 (E.D. Pa. June 22, 2000); Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982); Gianni v. Russell & Co., Inc., 126 A. 791, 792 (Pa. 1924); Union Storage Co. v. Speck, 45 A. 48, 49 (Pa. 1899); Hart v. Arnold, 884 A.2d 316, 339-41 (Pa. Super. Ct. 2005). Where a written contract contains an integration clause, "the law declares the writing to not only be the best, but the only evidence of [the parties'] agreement." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004). The purpose of an integration clause is to give effect to the parol evidence rule: "Thus, the written contract, if unambiguous, must be held to express all of the negotiations,

---

[19] One exception has been carved out for disputed residential real estate sales contracts, where defects were hidden and not readily discoverable upon the buyer's inspection. Blumenstock v. Gibson, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2003); Bowman v. Meadow Ridge, Inc., 615 A.2d 755, 759 (Pa. Super. Ct. 1992). This exception does not apply in the instant case.

conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." Hart, 884 A.2d at 341 (quoting 1726 Cherry St. v. Bell Atlantic, 653 A.2d 663, 665 (Pa. Super. Ct. 1995)).

Therefore, where a party claims fraud in the inducement and the written contract is fully integrated, the parol evidence rule works to bar evidence of any representations made about any matter covered by the agreement prior to the contract's execution. Id. However, in a situation commonly referred to as fraud in the execution, where the party proffering the evidence contends that certain terms were supposed to be included in the contract, but were omitted because of fraud, accident, or mistake, then parol evidence is admissible. Id. The Supreme Court of Pennsylvania has concisely stated this rule of law:

> [W]hile parol evidence may be introduced based on a party's claim that there was fraud in the execution of a contract, i.e., that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, i.e., that an opposing party made false representations that induced the complaining party to agree to the contract.

Toy v. Metro. Life Ins. Co., 928 A.2d 186, 205 (Pa. 2007) (internal citations omitted); see also Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1300 (3d Cir. 1996). The rationale behind this rule is "that a party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations." Hart, 884 A.2d at 340 (internal

citation omitted). Otherwise, "the parol evidence rule would become a mockery, because all a party to the written contract would have to do to avoid, modify, or nullify it would be to aver (and prove) that the false representations were <u>fraudulently</u> made. <u>Bardwell v. Willis</u>, 100 A.2d 102, 104 (Pa. 1953) (emphasis in original).

In this case, both the Partnership Agreement and Commercial Property Lease contain a clear and unambiguous integration clause. <u>See supra</u> notes 9-10. The plaintiffs are not alleging fraud in the execution, which only applies to situations where the parties agree to include certain terms in an agreement, but such terms were omitted because of fraud, accident, or mistake. <u>Dayhoff, Inc. v. H.J. Heinz Co.</u>, 86 F.3d 1287, 1300 (3d Cir. 1996); <u>Toy</u>, 928 A.2d at 205. Moreover, the plaintiffs failed to aver that Mr. Hassam's alleged prior oral representations were fraudulently omitted from the integrated written contract; they should have insisted that the alleged representations made by Mr. Hassam be set forth in their integrated written agreements. <u>Bardwell</u>,100 A.2d at 105 (stating that where a party asserts he relied on any understanding, promises, representations, or agreements made prior to the execution of the written contract or lease, that party should have protected himself by incorporating into the written agreement those promises or representations upon which he now relies); <u>Banks v. Hanoverian, Inc.</u>, 2006 WL 689106, at *3 (Pa. Ct. Com. Pl. Mar. 10, 2006) (holding that the plaintiff "should have protected himself by incorporating the representations upon

which he now purports to rely" into the agreement, because in light of the integration clause, he "cannot be bound by any representations other than those expressly contained within the Agreement"); see also 1726 Cherry St. v. Bell Atlantic, 653 A.2d 663, 670 (Pa. Super. Ct. 1995).  Applying the parol evidence rule to the instant case, any evidence of previous promises, representations, or agreements concerning the Partnership made by Mr. Hassam to Mr. Rahemtulla that is offered to avoid, modify, or nullify the integrated agreements is barred from admission.  See Haymond v. Lundy, 2000 WL 804432, at *6-7 (E.D. Pa. June 22, 2000) (applying parol evidence rule to fully integrated partnership agreement). Because the parol evidence rule bars evidence of Mr. Hassam's alleged prior fraudulent misrepresentations or omissions, the plaintiffs' fraud in the inducement claim cannot proceed as a matter of law.  Count I must therefore be dismissed.

Even if parol evidence were admissible, the plaintiffs' claim of intentional fraud would still be dismissed under the "gist of the action" doctrine.[20]  Courts are extremely cautious about permitting tort recovery based on contractual breaches. As the district court in Stout v. Peugeot Motors of Am. explained,

> While it is true that the mere existence of a contract between parties does not foreclose the possibility of a tort action arising between them, it does not follow that a plaintiff should be allowed to sue in tort for damages arising out of a breach of contract. To

[20]  The court in Hart v. Arnold explained that "gist" is a term of art that refers to "the essential ground or object of the action in point of law, without which there would be no cause of action."  884 A.2d 316, 340 (Pa. Super. Ct. 2005).

> hold otherwise would be to blur one reasonably bright line between contract and tort, and hence introduce needless confusion into the judicial process, a step that Pennsylvania's state and federal courts alike have refused to take.

662 F. Supp. 1016, 1018 (E.D. Pa. 1986); see also Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964); Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003). In this regard, the "gist of the action" doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims, where such tort claims

> (1) aris[e] solely from a contract between the parties; (2) when the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) when the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (internal citation omitted).  The conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of "breaches of duties imposed by mutual consensus agreements between particular individuals," while the latter aries out of "breaches of duties imposed by law as a matter of social policy." Id. at 339.  "In other words," the court in Hart explained, "a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."  Id.

In this case, the plaintiffs' fraud claim is so closely connected with the duties and obligations outlined in the Partnership Agreement and Commercial

Property Lease, that it is clearly grounded in contract.  Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) ("Where fraud claims are intertwined with breach of contract claims and the duties allegedly breached are created and grounded in the contract itself, the gist of the action is breach of contract."). For example, whether Mr. Hassam was required to deposit Mr. Rahemtulla's checks into a Partnership account; whether the restaurant was supposed to serve lunches ; whether Mr. Hassam was obligated to obtain a liquor license; and whether Mr. Hassam had the right to run side businesses out of the same kitchen to the exclusion of the Partnership – all of these issues arise out of the terms set forth in the contracts themselves.  See id. Therefore, the "gist of the action" doctrine operates to bar the plaintiffs' tort claim of intentional fraud. The defendants' motion to dismiss will be granted as to Count I.


**Misappropriation**

The plaintiffs allege that Mr. Hassam misappropriated the plaintiffs' money by wrongfully depositing $340,000 into personal accounts he shared with his wife and OM SRI SAI, Inc. and used the money for their own purposes.  (Doc. No. 61).  Despite the plaintiffs' request that the defendants return the $340,000, no money has yet been returned. Id.   In support of their claim, the plaintiffs cite to 18 Pa. Cons. Stat. Ann. § 3927, which makes a person guilty of theft if he or she obtains money by agreement and fails to

make the required disposition of the funds received.[21]   (Doc. No. 71 p. 13).

The defendants argue in opposition to summary judgment that there is no tort

of misappropriation of monies under Pennsylvania law, only misappropriation

of trade secrets and ideas.  (Doc. No. 86). They also assert that section 5 of

the Partnership Agreement is ambiguous, reflected by each party's differing

interpretation as to the purpose of the Rahemtulla's investment, where the

money should be deposited, and who had withdrawal rights, and that such

ambiguity creates issues of fact. Id.  In support of their motion to dismiss, the

defendants argue that the tort of misappropriation is barred by the "gist of the

action" doctrine. (Doc. Nos. 65, 86).

The defendants are not exactly correct in arguing that a tort of

misappropriation of monies does not exist under Pennsylvania law.  First, after

a thorough Westlaw and Lexis search, this court was hard-pressed to find any

Third Circuit or Pennsylvania case law expressly stating that misappropriation

of monies is not a proper cause of action in the Commonwealth.[22] Second, as

recently as December 2007, this court discussed misappropriation of a client's

funds in the context of whether a misappropriation/conversion exclusion

applies to bar professional liability insurance coverage.  Westport Ins. Corp.

v. Hanft & Knight, P.C., 523 F. Supp. 2d 444, 459-60 (M.D. Pa. 2007). In

---

[21]  Clearly, the plaintiffs cannot base civil liability upon a criminal statute.
This statute is therefore inapplicable to the case at bar.

[22]  However, every case where a plaintiff alleged misappropriation under
Pennsylvania law concerned the misappropriation of trade secrets or ideas.

31

Westport, this court first defined misappropriation as "[t]he application of another's property or money dishonestly to one's own use." Id. at 460 (citing Black's Law Dictionary (8th ed. 2004)). The tort of misappropriation was then described as having three elements: "(1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right"; (2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's actions as 'reaping where it has not sown'"; and (3) the defendant "has injured plaintiff by the misappropriation." Id. (quoting Sorbee Int'l Ltd. v. Chubb Custom Ins. Co., 735 A.2d 712, 716 (Pa. Super. Ct. 1999)).   After listing these elements, this court in Westport concluded that the attorney, Hanft, "unfairly appropriated the [plaintiff-client's] money, at almost no cost to himself and with only illusory collateral." Id. at 460. Although misappropriation was not a claim advanced in the plaintiff-client's underlying complaint, breach of the professional duty of care was an asserted cause of action. Id. at 448. It therefore appears that misappropriation of monies was subsumed under a claim for breach of fiduciary duty.

Accordingly, this court will apply the reasoning in Westport to the instant case and subsume the plaintiffs' claim of misappropriation under their related claims of breach of fiduciary duties. Id. at 460; see also In re Mushroom Transp. Co. Inc., 366 B.R. 414, 440-43 (Bankr. E.D. Pa. 2007) (holding that a shareholder's misappropriation of a chapter 7 trustee's funds constituted a

breach of fiduciary duty).  Because issues of fact remain as to whether it was a breach of Mr. Hassam's fiduciary duty as partner to, <u>inter</u> <u>alia</u>, deposit the plaintiffs' $340,000 into personal accounts rather than into a Partnership account, the plaintiffs' motion for summary judgment will be denied as to Count III.  In addition, misappropriation is not barred by the "gist of the action" doctrine because, for reasons explained <u>infra</u>, the fiduciary duties flowing between Mr. Rahemtulla and Mr. Hassam, as partners, are separate and distinct from the contractual duties contained within their Partnership Agreement.

If the defendants' motion to dismiss were the only pending motion before the court, the motion would be denied for reasons that the "gist of the action" doctrine does not apply to the tort of misappropriation of monies in this case. However, because the court is denying summary judgment and subsuming misappropriation under a claim for breach of fiduciary duties, this effectively nullifies misappropriation as a cause of action under Pennsylvania law.  For that separate reason, the defendants' motion to dismiss will be granted as to Count III.

**Conversion**

The plaintiffs' conversion claim is similar to their claim for misappropriation; the defendants are alleged to have improperly retained $340,000 belonging to the plaintiffs due to their failure to comply with the

terms of the Partnership Agreement.  Specifically, the plaintiffs cite to section 5 of the Partnership Agreement and argue that it is undisputed that Mr. Hassam received their $340,000, which was undisputably required to be deposited into the Partnership account, but was in fact retained by Mr. Hassam for his own use.  (Doc. No. 71).  The defendants argue in opposition that the ambiguity of the Partnership Agreement, specifically sections 5(B)-(C), creates genuine issues of material fact warranting a denial of summary judgment.  (Doc. No. 86).  The defendants also maintain that the claim for conversion fails as a matter of law because Mr. Rahemtulla voluntarily paid the subject funds to Mr. Hassam for an interest in a partnership and never had an immediate right to possession of the money at the time it was allegedly converted.  Id.  Finally, in support of their motion to dismiss, the defendants argue that the "gist of the action" doctrine bars the tort of conversion.  (Doc. No. 65).

Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property in, or use or possession of a chattel, or other interference therewith, without the owner's consent and without lawful justification." Universal Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir. 1995); McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000).  Money may be the subject of conversion, however the rights to this money must have originally belonged to the plaintiff. McKeeman, 751 A.2d at 659; Pittsburgh Const. Co. v. Griffith,

834 A.2d 572, 581 (Pa. Super. Ct. 2003).

First, an issue remains whether the $340,000 was Mr. Rahemtulla's payment towards his 49% interest in the Partnership, or whether such money was considered a Partnership asset.  If a jury reasonably believes that the $340,000 constituted the latter, then the court disagrees with the defendants that the plaintiffs no longer retained a legal right to the $340,000 at the time it was allegedly converted. Rather, pursuant to the Uniform Partnership Act ("UPA") in Pennsylvania, Mr. Rahemtulla has maintained a possessory interest in the money at all times.  See 15 Pa. Cons. Stat. Ann. §§ 8301-8365 (2007).  First, it is a general rule under the UPA that "[a]ll property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property." Id. § 8313 (emphasis added). Each partner's property rights are: "(1) His rights in specific partnership property; (2) His interest in the partnership; and (3) His right to participate in the management."  Id. § 8341.  Moreover, each partner is considered a co-owner of specific partnership property and has an equal right with his copartners to possess partnership property for partnership purposes. Id. § 8342.  It is therefore abundantly clear that if the $340,000 is considered a Partnership asset, Mr. Rahemtulla continued to have constructive possession of such money during the lifetime of the Partnership, as co-owner of the Partnership property.

Nonetheless, courts have applied the "gist of the action" doctrine to

35

conversion claims when entitlement to the chattel is predicated solely on the agreement between the parties.  See, e.g.,Murphy v. Mid East Oil Co., 2007 WL 527715, at *5-6 (W.D. Pa. Feb. 14, 2007) (dismissing conversion claim because it was dependent on the defendant's noncompliance with the terms of the agreements); Montgomery v. Fed. Ins. Co., 836 F. Supp. 292, 301-02 (E.D. Pa. 1993) (dismissing conversion claim because of, inter alia, the "firmly accepted . . . doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach of contract"); Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 584 (Pa. Super. Ct. 2003) (stating that where success of the conversion claim "depend[s] entirely on the obligations as defined by the contract," the "gist of the action" doctrine applies).  In this case, the gist of the plaintiffs' conversion claim lies in contract, not tort, because it arises out of Mr. Hassam's alleged nonperformance of contractual obligations set forth in the Partnership Agreement. Because any rights the plaintiffs might have to their $340,000 are defined by the terms of the Partnership Agreement, which has been determined to be an enforceable contract, they cannot sue in tort for conversion of that money. Instead, any rights to their $340,000 would properly be protected by a contract action seeking enforcement of the Partnership Agreement or damages for its breach. Unfortunately for the plaintiffs, however, because they have not pled any breach of the Partnership Agreement, their claim for conversion must be dismissed under the "gist of the action" doctrine.  The defendants' motion to dismiss is therefore granted as

to Count IV.[23]

## Breach of Fiduciary Duty

In their amended complaint, the plaintiffs advance three separate claims concerning the fiduciary duties of honesty, good faith, loyalty, and fair dealing that Mr. Hassam allegedly owed to Mr. Rahemtulla. (Doc. No. 61, Counts V-VII). In the interest of avoiding any redundancy in this discussion, the three claims will be combined into a single claim for breach of fiduciary duty. The plaintiffs essentially argue that Mr. Hassam breached his fiduciary duty of honesty, good faith, loyalty, and fair dealing that he owed to Mr. Rahemtulla by nature of them being copartners by, inter alia,

> making off with the money that he was entrusted to deposit into the partnership account; keeping business that should have been made available to the partnership; misusing and diverting other partnership property during the operation of the partnership and engaging in acts of self-dealing and otherwise failing to account or respect the interests of Mr. Rahemtulla, his partner, or the partnership itself.

(Doc. No. 71 p. 14). As noted above, the plaintiffs' claim for misappropriation of their $340,000 also falls within these allegations. The defendants contend that these torts are likewise barred by the "gist of the action" doctrine. (Doc. Nos. 65, 86).

---

[23] The plaintiffs' claim for conversion is not subsumed under their claim for breach of fiduciary duties because, unlike their claim for misappropriation of monies, conversion is recognized under Pennsylvania law. Consequently, because it constitutes an individual cause of action, it must be dismissed.

In a Pennsylvania general or limited partnership, "[t]here is a fiduciary relationship between partners. . . . [C]opartners owe to one another . . . the duty of the finest loyalty." Clement v. Clement, 260 A.2d 728, 729 (Pa. 1970); see also Poeta v. Jaffe, 51 Pa. D. & C. 4th 78, 84 (Pa. Ct. Com. Pl. 2001) ("In general, partners owe a fiduciary duty to each other to act in good faith during the life of the partnership."); 15 Pa. Cons. Stat. Ann. § 8334 (partners are accountable as fiduciaries to each other).  Under the UPA, each partner is obligated to "render on demand true and full information of all things affecting the partnership to any partner." 15 Pa. Cons. Stat. Ann. § 8333. The Supreme Court of Pennsylvania explained, "One should not have to deal with his partner as though he were the opposite party in an arms-length transaction. One should be allowed to trust his partner, to expect that he is pursuing a common goal and not working at cross-purposes." Clement, 260 A.2d at 729.

To establish breach of fiduciary duty under Pennsylvania law, "a plaintiff must demonstrate that a fiduciary relationship exists between the parties and that the defendant breached its fiduciary duty by failing to act for the benefit of the partnership, and instead, acted in a manner to promote his individual interests." CH&H Pa. Props., Inc. v. Heffernan, (E.D. Pa. Aug. 20, 2003). For example, in Packer v. Magellan Fin. Corp., 1999 WL 371652 (E.D. Pa. June 7, 1999), the plaintiffs alleged that the defendant partner deceptively convinced them to trade in his debt to buy shares of his company, when he actually arranged for the sale of those same shares to benefit his children.  On

38

the defendant's motion for summary judgment, the court ruled that the plaintiffs created a triable issue of fact regarding whether the defendant breached his fiduciary duty to his partners by secretly assigning his shares to his children in violation of their limited partnership agreement; concealing this fact from his partners; and by failing to reveal the true identity of the entity that bought out the plaintiffs' shares. Id. at *5. In essence, a jury could reasonably conclude that the defendant in Packer failed to act in the best interests of his partners and instead, acted in a manner to promote his own individual interests.

In this case, it is clear that as a partner of the Kilimanjaro Steak House Bar & Grill, Mr. Hassam owed a fiduciary duty to his co-partner, Mr. Rahemtulla. 15 Pa. Cons. Stat. Ann. § 8334.  It is also clear that the plaintiffs have created triable issues of fact regarding whether Mr. Hassam breached his fiduciary duty by misrepresenting the legal existence and his position as President of OMSRISHI, Inc; not revealing the true identity of OM SRI SAI, Inc.; failing to deposit the plaintiffs' money into a Partnership account; not working to increase the restaurant's profits through the sale of lunches or liquor; and in general, acting to promote his own individual interests rather than in the best interest of the Partnership. For these reasons, summary judgment must be denied.  The issue remains whether the "gist of the action" doctrine applies.

Various courts have held that a breach of fiduciary duty claim will

survive the "gist of the action" doctrine because the fiduciary obligations between partners are not generally defined by their agreements, but imposed by the larger social policies embodied in the law of torts. See, e.g.,Murphy v. Mid East Oil Co., 2007 WL 527715, at *6-7 (W.D. Pa. Feb. 14, 2007) ("gist of the action" doctrine does not bar claims for breach of fiduciary duty); Haydinger v. Freedman, 2000 WL 748055, at *8 (E.D. Pa. June 8, 2000) (holding that Pennsylvania law allows a limited partner to bring an action against a general partner for breach of fiduciary duty); Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001) ("the obligations that Uddeholm alleges Ellwood breached in its fiduciary duty claim were imposed 'as a matter of social policy' rather than 'by mutual consensus'"; but see Haymond v. Lundy, 2000 WL 804432, at *14 (E.D. Pa. June 22, 2000) (holding that the fiduciary duty between partners has limits and does not apply to every interaction merely because the partnership exists). Here, the gravamen of the plaintiffs' claim is not breach of contract, because the fiduciary duties flowing between Mr. Rahemtulla and Mr. Hassam are separate and distinct from the contractual duties contained within their Partnership Agreement. Their written contract simply does not provide for the fundamental characteristics of trust, fairness, honesty, and good faith that define the essence of the partners' relationship. Nor does their contract expressly proscribe the slightest misrepresentation or concealment of any kind. Because the plaintiffs' claim for breach of fiduciary duty is imposed as a

40

matter of social policy and not by written consensus, the "gist of the action" doctrine does not apply.  Accordingly, as to Counts V, VI, and VII, both the plaintiffs' motion for summary judgment and the defendants' motion to dismiss are denied.  However, as noted above, the claims will be consolidated into a single count of Breach of Fiduciary Duty.

**Unjust Enrichment**

In Count XI, the plaintiffs claim that the defendants were unjustly enriched when their $340,000 was deposited into the defendants' personal accounts, and that it is inequitable for the defendants to have accepted and retained those and other benefits, such as Mr. Rahemtulla's time and labor. (Doc. Nos. 61, 71). The defendants principally argue that "where the obligations of the parties are set forth in a written agreement or contract, the doctrine of unjust enrichment is inapplicable." (Doc. No. 86 p. 23). Specifically, because Mr. Hassam's alleged obligation to deposit the plaintiffs' money into a Partnership account was contained within a written agreement between the parties, there can be no equitable action for unjust enrichment. Id. The plaintiffs contend in response that "there are no enforceable contracts in this case" and therefore their claim for unjust enrichment remains valid. (Doc. No. 97-4 p. 10).

An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law. Sevast v. Kakouras, 915

41

A.2d 1147, 1153 n.7 (Pa. 2007).[24]   Where a plaintiff claims unjust enrichment,

he is required to "show that the party against whom recovery is sought either

wrongfully secured or passively received a benefit that would be

unconscionable for the party to retain without compensating the provider."

Bair v. Purcell, 500 F. Supp. 2d 468, 499 (M.D. Pa. 2007) (quoting Hershey

Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987)).   Under

Pennsylvania law, the elements of a claim for unjust enrichment are: (1) the

plaintiff conferred a benefit upon the defendant; (2) an appreciation of such

benefits by the defendant; and (3) the defendant accepted and retained such

benefit under circumstances where it would be inequitable for the defendant

to retain the benefit without payment of value.   Allegheny Gen. Hosp. v. Phillip

Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000); Temple Univ. Hosp., Inc. v.

Healthcare Mgmt. Alternatives, Inc., 832 A.2d 501, 507 (Pa. Super. Ct. 2003).

Where unjust enrichment is found, the law implies a quasi-contract between

the parties, which requires the defendant to pay the plaintiff the value of the

benefit conferred.   Walter v. Magee-Women's Hosp., 876 A.2d 400, 407 (Pa.

Super. Ct. 2005); Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254

(Pa. 2006) ("[T]he doctrine of unjust enrichment contemplates that '[a] person

---

[24] This is to be distinguished from express contracts or contracts implied
in fact: "[U]nlike true contracts, quasi-contracts are not based on the apparent
intention of the parties to undertake the performances in question, nor are
they promises. They are obligations created by law for reasons of justice." Id.

who has been unjustly enriched at the expense of another must make restitution to the other.'") (internal citation omitted).   For example, unjust enrichment has been applied in circumstances where the defendant has acted wrongfully or fraudulently in appropriating the plaintiff's property.  See, e.g., Robbins v. Kristofic, 643 A.2d 1079 (Pa. Super. Ct. 1994) (defendant misappropriated plaintiffs' funds); Denny v. Cavalieri, 443 A.2d 333 (Pa. Super. Ct. 1982) (financial advisors defrauded plaintiff of funds he gave defendants).

It is well settled, however, that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon written agreements, no matter how "harsh the provisions of such contracts may seem in the light of subsequent happenings."  Wilson Area Sch. Dist., 895 A.2d at1254; Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) (noting that by its nature, unjust enrichment is inapplicable where a written or express contract exists).  As the Court in Wilson explained,

> [T]his bright-line rule also has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity . . . are not entitled to the remedies available under a judicially-imposed quasi-contract [i.e. the parties are not entitled to restitution based on unjust enrichment] because the terms of their agreement (express or implied) define their respective rights, duties, and expectations.

Id. at 1254.

Recognizing that a valid and enforceable written contract exists between the parties, the court agrees with the defendants that an unjust enrichment

43

action cannot proceed against Mr. Hassam in the face of a fully-executed, express contract between himself and Mr. Rahemtulla. However, because the plaintiffs are not in contractual privity with either Mrs. Hassam or with OM SRI SAI, Inc., the plaintiffs' claim for unjust enrichment may proceed against them. See Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) (allowing claims for unjust enrichment to proceed against defendants who were not parties to the original contract). Based upon the evidence in the record, a reasonable jury could conclude that Mrs. Hassam and OM SRI SAI, Inc. were unjustly enriched when some part of the plaintiffs' $340,000 was deposited into their personal accounts, shared with Mr. Hassam of course, at First Union National Bank. Issues of fact remain whether Mrs. Hassam and OM SRI SAi, Inc. passively received this benefit which would be unconscionable for them to retain. Accordingly, Count XI will be dismissed as against Mr. Hassam, and the plaintiffs' motion for summary judgment is denied in Count XI as to defendants Shamshad Hassam and OM SRI SAI, Inc.

## VI.    Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** the defendants' Motion to Dismiss, **(Doc. No. 65)**, is **GRANTED IN PART AND DENIED IN PART**; and the plaintiffs' Motion for partial Summary Judgment, **(Doc. No. 70)**, is **DENIED** as follows:

(1)    Counts I, II, IV, and IX are dismissed;

(2)    Counts V, VI, and VII are consolidated into a single count of breach of fiduciary duty;

(3)    Count III is dismissed, however it is effectively subsumed under breach of fiduciary duty; and

(4)    Count XI is dismissed as to Mr. Nazim Hassam only.



s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** March 24, 2008

O:\shared\MEMORANDUMS\2005 MEMORANDUMS\05-0198.02.wpd